UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALEXANDER GALLO**, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:24-cv-01746 (TNM) |
| **DISTRICT OF COLUMBIA**, | |
| Defendant. | |

## MEMORANDUM OPINION

Early in the COVID-19 pandemic, the District of Columbia barred landlords from evicting tenants during the public-health emergency. It also prohibited them from filing eviction suits. Alexander Gallo, DeShaun Proctor, and Gavin Clarke claim that the District's moratoria violated their rights under the Contracts Clause, Due Process Clause, and Takings Clause. Gallo has previously litigated these claims before this Court,[1] so res judicata now blocks them for him. In any event, Gallo fails to state a claim under any constitutional provision, and so do Proctor and Clarke. The Court thus will grant the District's Motion to Dismiss.

I.

Gallo, Proctor, and Clarke each own and manage rental properties in the District of Columbia. Compl., ECF No. 1-3, ¶¶ 1–2. In March 2020, the District imposed an eviction moratorium as part of its COVID-19 response. *See* COVID-19 Response Emergency

---

[1] *See Gallo v. District of Columbia* ("*Gallo I*"), 610 F. Supp. 3d 73 (D.D.C. 2022); *Gallo v. District of Columbia* ("*Gallo II*"), No. 21-cv-3298, 2023 WL 7552703 (D.D.C. Nov. 14, 2023), *aff'd*, No. 23-7158, 2025 WL 1446283 (D.C. Cir. May 20, 2025).

Amendment Act of 2020, D.C. Act 23-247, 67 D.C. Reg. 3093, 3102–03 (Mar. 17, 2020). This law "precluded landlords from evicting tenants during a period of time for which the Mayor has declared a public health emergency, except in cases of illegal conduct, undue hardship on neighbors, and abandonment." *Gallo v. District of Columbia* ("*Gallo III*"), No. 23-7158, 2025 WL 1446283, at *1 (D.C. Cir. May 20, 2025) (per curiam) (quoting D.C. Code § 42-3505.01(k)(3) (2020)) (cleaned up).

Two months later, the District added a "filing moratorium" that prohibited landlords from initiating eviction suits during the declared emergency "and for 60 days thereafter." *Id.* at *2 (quoting D.C. Code § 16-1501(b) (2020)). The filing moratorium's "primary contribution . . . was to prevent landlords from filing lawsuits that would spring into effect once the prohibition ended." *Id.* Neither law "extinguished any cause of action or immunized any party from suit," and the statute of limitations for ejectment actions was tolled during the emergency. *Gallo v. District of Columbia* ("*Gallo II*"), No. 21-cv-3298, 2023 WL 7552703, at *2 (D.D.C. Nov. 14, 2023), *aff'd*, No. 23-7158, 2025 WL 1446283 (D.C. Cir. May 20, 2025). The moratoria lapsed in October 2021, *Gallo v. District of Columbia* ("*Gallo I*"), 610 F. Supp. 3d 73, 89 (D.D.C. 2022), but in the meantime they caused trouble for the three landlord-plaintiffs here.

Gallo bought a condo at a February 2020 foreclosure auction. Compl. ¶ 4. The next month, he served an eviction notice on the condo's former owner and occupant, Andre Hopkins, terminating Hopkins's resulting tenancy-at-will effective May 5, 2020. *Id.* ¶¶ 4, 8; *Gallo II*, 2023 WL 7552703, at *1. Hopkins did not leave or pay rent until Gallo evicted him in 2022 after the moratoria had ended. Compl. ¶¶ 8, 42. During the moratoria, Gallo obtained a money judgment against Hopkins that remains "unsatisfied" and "non-collectible." *Id.* ¶ 36. And while

2

Gallo initially had overdue payments from other tenants, they all "decided to pay up." *Id.* ¶¶ 12, 35, 42.

Proctor owns a single-family house in the District. *Id.* ¶ 2. In December 2020, she began leasing to a new tenant who defaulted on payment some months later. *Id.* ¶¶ 28, 32. She alleges that the "squatter" "trashed the house" and caused $20,000 in damage. *Id.* ¶¶ 32, 48. In 2022, Proctor tried but failed to find an attorney to help her enforce the lease, and her tenant's debts ballooned to $70,000. *Id.* ¶¶ 46–47. Proctor has little hope of securing a money judgment because her tenant passed away in 2023 without an estate. *Id.* ¶ 48.

Clarke owns a multifamily house in the District. *Id.* ¶ 2. In March 2020, his tenant stopped paying rent and accumulated debt that he agreed to discharge via a payment plan. *Id.* ¶¶ 6, 35, 43. But when Clarke gave his still-defaulting tenant an ultimatum in early 2023, the tenant quit the property without paying the roughly $22,000 owed. *Id.* ¶ 45.

Gallo, Proctor, and Clarke sued in the Superior Court of the District of Columbia in May 2024, and the District removed the case to this Court. *See* Notice of Removal, ECF No. 1, at 1–2. The District later moved to dismiss. Mot. to Dismiss, ECF No. 7; *see also* Pls.' Opp. Mot. to Dismiss, ECF No. 9; Def.'s Reply, ECF No. 10. After the parties submitted their briefing, the Court stayed the case pending resolution of the appeal in Gallo's earlier lawsuit. Order, ECF No. 17. The D.C. Circuit issued its opinion affirming this Court's dismissal in May 2025. *See Gallo III*, 2025 WL 1446283, at *7. The District's Motion to Dismiss is now ripe for review.[2]

---

[2] This Court has subject matter jurisdiction over the federal constitutional claims under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over any D.C. law claims. 28 U.S.C. § 1367.

II.

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  And while the court must accept all "well-pleaded factual allegations," it need not credit "legal conclusions." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

Pro se complaints must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). "Nonetheless, a pro se complaint, like any other, must present a claim upon which relief can be granted by the court." *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994) (cleaned up).

III.

Res judicata bars Gallo's claims.  But even if not, they would fail on the merits along with Proctor's and Clarke's claims.  The Court first addresses res judicata and then turns to Plaintiffs' legal theories.

A.

Res judicata blocks a follow-on suit if the prior litigation "(1) involv[ed] the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Porter v. Shah*, 606 F.3d 809, 813 (D.C. Cir. 2010) (cleaned up).  "Whether two cases implicate the same cause of action

turns on whether they share the same nucleus of facts." *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (cleaned up). This means that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in that action." *Id*. (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

The latter three elements are quickly met. Gallo's prior suit involved the same parties: Gallo and the District. *See Gallo I*, 610 F. Supp. 3d at 78–79. That action led to a "final, valid judgment on the merits . . . by a court of competent jurisdiction." *See Porter*, 606 F.3d at 813 (cleaned up). The Court dismissed Gallo's case without prejudice in *Gallo I*. *See* 610 F. Supp. 3d at 91. It then granted his motion for reconsideration so he could replead with greater specificity. *Gallo v. District of Columbia*, 659 F. Supp. 3d 21, 26 (D.D.C. 2023). Because Gallo's amended complaint remained deficient, the Court dismissed it again—this time with prejudice. *See Gallo II*, 2023 WL 7552703, at *7. The D.C. Circuit affirmed that ruling, *Gallo III*, 2025 WL 1446283, at *7, and the Supreme Court denied certiorari, *Gallo v. District of Columbia*, 2025 WL 2906538 (U.S. Oct. 14, 2025). Neither party challenges the Court's jurisdiction, and its "[d]ismissal with prejudice operates as a rejection of [Gallo's] claims on the merits." *See Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) (cleaned up).

Gallo's new claims also share a "nucleus of facts" with his prior suit: Gallo's inability to evict Hopkins during the eviction and filing moratoria.[3] *Compare* Compl. ¶¶ 5, 8, 12, 27, *with Gallo I*, 610 F. Supp. 3d at 78–80, *and Gallo II*, 2023 WL 7552703, at *1–2. On this go-around, Gallo adds due process and breach of contract claims. *See* Compl. at 16–17. But res judicata hinges on the "factual nucleus, not the theory on which a plaintiff relies." *Sheptock v. Fenty*, 707

---

[3] Gallo also hints to other tenants that eventually "decided to pay up." Compl. ¶¶ 12, 35, 42. But that does not change the fact that Gallo is suing over the same eviction and filing moratoria.

F.3d 326, 330 (D.C. Cir. 2013) (cleaned up). Because Gallo sues over the same failed eviction, he could have brought his claims in the earlier suit. Gallo betrays as much in stating that "[t]his complaint succeeds" his prior suits. *See* Compl. at 1. Gallo is "simply raising a new legal theory"—precisely what res judicata forbids. *Apotex, Inc. v. FDA*, 393 F.3d 210, 218 (D.C. Cir. 2004). And even if res judicata did not apply, Gallo's claims would still falter on the merits alongside Proctor's and Clarke's. The Court now turns to these claims.

**B.**

Plaintiffs advance claims under the Contracts Clause, Due Process Clause, and Takings Clause.[4] None succeeds.

**i.**

Start with the Contracts Clause. Plaintiffs assert that the eviction and filing moratoria impaired their contractual rights vis-à-vis their tenants. Compl. at 14–16. Plaintiffs' claims falter out of the gate because neither provision they invoke—D.C. Code § 1-203 and 42 U.S.C. § 1983—gives them a private right of action.

First, Plaintiffs cannot shoehorn their Contracts Clause claims into D.C. Code § 1-203 because that statute creates no private cause of action. Under D.C. law, a private right of action exists only if "the legislature intended to create a particular cause of action" and such intent "can be inferred from the language of the statute, the statutory structure, or some other source." *Coates v. Elzie*, 768 A.2d 997, 1001 (D.C. 2001) (cleaned up). Section 1-203 merely extends the

---

[4] Plaintiffs also try to bring breach of contract and writ of waste claims. Compl. at 17–18. Neither has legs. Writ of waste claims run only against tenants, but Plaintiffs sue only the District. *See* D.C. Code § 42-1601; *Gallo II*, 2023 WL 7552703, at *4. The breach of contract theory fails because no Plaintiff alleges a contract with the District. *See Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) ("To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties . . . .").

6

Contracts Clause to the District of Columbia through the Home Rule Act. *See* D.C. Code § 1-203.02; *D.C. Police Union v. District of Columbia*, 45 F.4th 954, 961 (D.C. Cir. 2022). Nowhere does the statute reflect a legislative intent to create a private remedy. Nor do Plaintiffs provide any other source from which the Court could infer one. Plaintiffs thus cannot sue via § 1-203.

Second, 42 U.S.C. § 1983 likewise creates no vehicle for enforcing the Contracts Clause. In *Gallo II*, the Court held that the Contracts Clause is not enforceable through § 1983. 2023 WL 7552703, at *4. That conclusion follows from *Carter v. Greenhow*, 114 U.S. 317 (1885), where the Supreme Court ruled that "the only right secured" by the Contracts Clause is for a plaintiff "[i]n any judicial proceeding necessary to vindicate his rights under a contract affected by [state] legislation . . . to have a judicial determination declaring the nullity of the attempt to impair its obligation." *Id.* at 322.[5]

More, even if § 1983 were a proper vehicle, Plaintiffs' claims would still lack merit. The Contracts Clause forbids states from passing any "Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. Courts apply a two-step test to determine whether a state law "crosses the constitutional line." *Sveen v. Melin*, 584 U.S. 811, 819 (2018). "The threshold issue is whether the state law has 'operated as a substantial impairment of a contractual relationship.'" *Id.* (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). That inquiry "consider[s] the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his

---

[5] The D.C. Circuit in *Gallo III* acknowledged "that the Circuits are split as to whether § 1983 permits a plaintiff to bring a claim under the Contracts Clause." 2025 WL 1446283, at *3 (collecting cases). But the Circuit did not reach the issue as "Gallo ha[d] failed to allege the requisite elements" of a Contracts Clause claim. *Id.*

rights." *Id.* If there is a "substantial impairment," courts then "ask[ ] whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Id.* (quoting *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–412 (1983)).

Gallo's claim fails right at the start—and not only due to res judicata. *See supra* Part III.A. Gallo does not allege the existence of a contract. "Hopkins, a post-foreclosure tenant at will, had no contractual relationship with Gallo." *Gallo III*, 2025 WL 1446823, at *3; *see* Compl. ¶¶ 4, 8. Under D.C. law, "tenants at will after foreclosure [are] not in a contractual relationship with [the owner that] purchased the property at foreclosure." *Taylor v. First Am. Title Co.*, 509 A.2d 96, 97 (D.C. 1986). No contract means no claim. *See Sveen*, 584 U.S. at 819.

Proctor alleges a contractual relationship but misses on timing. As Proctor admits, her "impaired lease was signed in December 2020, when the moratorium was scheduled to end 2 weeks later." Compl. at 14, 16, ¶ 28. Because the moratoria were long in place when Proctor entered the contract, the District could not have "interfere[d] with [her] reasonable expectations." *See Sveen*, 584 U.S. at 819. When the moratoria came into effect, Proctor did not have a "*pre-existing* contract[ ]." *See id.* (emphasis added). Proctor's claim thus falters at step one.

Unlike his co-plaintiffs, Clarke had an existing tenant before the moratoria. He alleges that his tenant breached the lease shortly after the eviction moratorium, accrued a debt around $22,000, and refused to pay. Compl. ¶¶ 6, 27, 35, 45. He contends that the moratoria made him "unable to enforce his lease," forcing him to let his defaulted tenant remain until the tenant eventually decided to "disappear and not pay." *Id.* ¶¶ 35, 45.

8

Clarke comes closer than Proctor or Gallo, but he falls short, nonetheless. Clarke fails to plead that the District's moratoria "operated as a substantial impairment of [his] contractual relationship." *See Sveen*, 584 U.S. at 819 (cleaned up). Neither moratorium "extinguished any cause of action or immunized any party from suit." *Gallo II*, 2023 WL 7552703, at *2. Their "effects [we]re temporary, and rent continue[d] to accrue while [they were] in effect." *Gallo I*, 610 F. Supp. 3d at 85.[6] And the statute of limitations was tolled during the emergency. *Gallo II*, 2023 WL 7552703, at *2. Clarke does not allege that he has even tried to sue or enforce his contract since the moratoria's end. *See* Compl. ¶ 45. The District's emergency measures thus did not "undermine the contractual bargain" or "prevent [Clarke] from safeguarding or reinstating his rights." *See Sveen*, 584 U.S. at 819.

\* \* \*

Even if the Contracts Clause provided Plaintiffs a cause of action, it would still afford them no relief.

**ii.**

Plaintiffs next advance due process claims. As Plaintiffs' claims are against the District of Columbia, they travel under the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 498–99 (1954). Because Plaintiffs' claims are all similar, the Court will address them together.

The Fifth Amendment guards against deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause has both a procedural and

---

[6] This temporal limit distinguishes this case from *Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir. 2022). In *Walz*, the Eighth Circuit's conclusion that Minnesota's eviction moratorium infringed the Contracts Clause relied heavily on the moratorium's indefinite duration. *See id.* at 724, 729–32.

substantive component. *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1265 (D.C. Cir. 2020). Plaintiffs succeed under neither theory.

To state a procedural due process claim, a plaintiff must allege that "an official deprive[d] [him] of a liberty or property interest without providing appropriate procedural protections." *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). The complaint must also "suggest what sort of process is due." *Elkins v. District of Columbia*, 690 F.3d 554, 561 (D.C. Cir. 2012) (cleaned up). Plaintiffs stumble on both fronts. They do not explain how the District provided inadequate process in passing the moratoria just like any other legislation. *See* Compl. at 16. Nor do they elaborate what process was due. *See id.* Because the challenged deprivation "is the direct consequence of a statute, and there is no alleged defect in the legislative process, there is no basis for a procedural due process claim." *Hill v. U.S. Dep't of Interior*, 151 F.4th 420, 434 (D.C. Cir. 2025) (cleaned up).

Substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Because "[i]dentifying unenumerated rights carries a serious risk of judicial overreach," courts must "exercise the utmost care whenever [they] are asked to break new ground in this field." *Dep't of State v. Munoz*, 602 U.S. 899, 910 (2024) (cleaned up). To that end, courts "insist on a careful description of the asserted fundamental liberty interest." *Id.* (cleaned up). And they extend due process protection only to "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Glucksberg*, 521 U.S. at 720–21.

Plaintiffs do not identify—let alone carefully describe—the fundamental right that the District allegedly infringed. They instead frame their due process claim as another species of

10

"confiscation of income" or taking. *See* Compl. at 16; Pls.' Opp. at 2–4. To be sure, the D.C. Circuit has stated that "the requirements of the takings clause cannot be said to exhaust the Fifth Amendment's substantive protection of property rights from government imposition." *Tri Cnty. Indus., Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997); *but see Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 721 (2010) (Scalia, J.) (plurality opinion) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (cleaned up)). Here, the Court need not explore the daylight between the Takings Clause and substantive due process. Plaintiffs do not allege the existence of any standalone fundamental right, and that failure is fatal. *See Munoz*, 602 U.S. at 910.

### iii.

Last, Proctor and Clarke assert takings claims under "both physical and regulatory takings theories." Compl. at 17. The Takings Clause prohibits the government from taking "private property . . . for public use, without just compensation." U.S. Const. amend. V. Plaintiffs fail to state takings claims for the same reasons the Court discussed in *Gallo II*. *See* 2023 WL 7552703, at *4–6. The Court will briefly recap that reasoning.

Begin with the physical takings theory. Neither Proctor nor Clarke alleges that the District took title to or physical possession of their properties. They instead plead that the District forbade them from evicting their tenants during the declared emergency. *See* Compl. at 17. As in *Gallo II*, "the question is whether the District's temporary suspension of eviction as a landlord remedy counts as a physical occupation for Takings Clause purposes." *See* 2023 WL 7552703, at *4. It does not. In *Yee v. City of Escondido*, 503 U.S. 519 (1992), the Supreme

11

Court ruled that "[t]he government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of the land." *Id.* at 527 (emphasis in original). Both Proctor and Clarke voluntarily leased their properties, *see* Compl. ¶¶ 2, 6, 28, and "what matter[s] is that the tenancy was *initially* voluntary," *Gallo II*, 2023 WL 7552703, at *5 (citing *Yee*, 503 U.S. at 528). Because *Yee* controls, that spells doom for Plaintiffs' physical takings claims.[7]

The prospects are just as gloomy for Plaintiffs' regulatory takings claims. A law effects a per se regulatory taking only when it "denies all economically beneficial or productive use of" an owner's property. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992). That is not the case here. As noted above and reaffirmed by the D.C. Circuit, "nothing in the moratoria relieved tenants of their obligation to pay rent." *Gallo III*, 2025 WL 1446283, at *6. The "law did not stop [tenants] from accruing liability for money damages over the continued occupation of the units." *Id*. Like Gallo, both Proctor and Clarke could recoup the economic value of their properties after the moratoria ended. *See Gallo II*, 2023 WL 7552703, at *6. Their per se claim thus cannot stand.

Nor can Plaintiffs state a regulatory taking under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). That inquiry considers the regulation's economic effect on the plaintiff, the degree of interference with his reasonable investment-backed expectations, and the character of the governmental action. *See id.* at 124. No factor weighs in Plaintiffs' favor. Proctor alleges that her tenant owes $70,000, Compl. ¶¶ 46–47, while Clarke's tenant owes $22,000, *id.* ¶ 45. These are significant losses, to be sure, but they do not rise to the "striking

---

[7] In *Gallo II*, the Court acknowledged the "tension" between *Yee* and *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021). *Gallo II*, 2023 WL 7552703, at *5 n.5. But "*Cedar Point Nursery* cited *Yee* with approval," *id.* (citing *Cedar Point*, 594 U.S. at 149), and *Yee* controls here just as in *Gallo II*.

12

evidence of economic effects" that would support a *Penn Central* claim. *See Dist. Intown Props. Ltd. P'ship v. District of Columbia*, 198 F.3d 874, 883 (D.C. Cir. 1999); *see also Gallo I*, 610 F. Supp. 3d at 90 (holding that $36,400 in losses did "not meet th[e] high standard" for "striking evidence of economic effects" (cleaned up)).

The problem with Plaintiffs' theory is that "diminution in the value of property or other financial injury because of regulatory action by itself does not generally constitute a taking." *Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 456 (6th Cir. 2009); *see also Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 645 (1993) ("[O]ur cases have long established that mere diminution in the value of property, however serious, is insufficient to demonstrate a taking."). Indeed, *Penn Central* reaffirmed two previous decisions in which the Supreme Court had upheld regulations that caused 75% and 87.5% diminutions in property value, respectively. *See* 438 U.S. at 131 (collecting cases). All told, Plaintiffs' unrecovered rent and damages do not clear *Penn Central*'s high bar. After all, the moratoria have now ended, and Plaintiffs retain full ownership of their properties.

As for Plaintiffs' investment-backed expectations and the character of the governmental action, they do not bode well either. *See id.* at 124. On the former, "the specific kind of regulation at issue had occurred before"—and in the District, no less. *Gallo II*, 2023 WL 7552703, at *6 (citing *Block v. Hirsh*, 256 U.S. 135, 153–54 (1921)). Plaintiffs thus "had no reasonable expectation that [a moratorium] could not recur." *Id.* On the latter, the moratoria "simply deferred a specific remedy (eviction) until after the public health emergency" and served "a legitimate public purpose." *Id.* (cleaned up). In the end, Plaintiffs cannot prevail on their physical or regulatory takings claims.

## IV.

Gallo's claims are barred by res judicata and fail on their own merits. The Court will dismiss them with prejudice. *See Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1340 (D.C. Cir. 2015) ("Dismissal with prejudice is warranted when the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." (cleaned up)). Proctor and Clarke also come up short here. But the Court will dismiss their claims without prejudice because it is at least possible (if unlikely) that they could plead additional facts to survive dismissal. *See id.* A separate Order will issue today.

Dated: November 14, 2025

                                                          TREVOR N. McFADDEN
                                                          United States District Judge